**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

VERNON M. STATON,

    Petitioner,                              Civil No. 04-CV-73287-DT
                                                      HONORABLE AVERN COHN
v.                                          UNITED STATES DISTRICT JUDGE

MILLICENT WARREN,

    Respondent,
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254. Petitioner Vernon M. Staton (Petitioner) is a state inmate at the Thumb Correctional Facility in Lapeer, Michigan, where he is serving a sentence of fifteen to thirty five years in prison for the crime of first-degree criminal sexual conduct and being a fourth felony habitual offender, Mich. Comp. Laws §§ 750.520b(1)(a); 769.12; and ten to thirty five years in prison for the crime of second-degree criminal sexual conduct and being a fourth felony habitual offender, Mich. Comp. Laws §§ 750.520c(1)(a); 769.12. The sentences are concurrent. Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Attorney General's Office, filed a response, arguing that petitioner's claims lack merit. For the reasons which follow, the petition will be denied.

## II. Procedural History

Petitioner was convicted of the above offenses following a jury trial in the St. Clair County Circuit Court.

Petitioner filed an appeal of right to the Michigan Court of Appeals, presenting the claims that he raises in the instant petition. The Michigan Court of Appeals affirmed petitioner's conviction, although it remanded the case to the trial court to correct the judgment of sentence to accurately reflect that petitioner's sentences were to run concurrently with one another. *People v. Staton,* 236380 (Mich.Ct.App. February 18, 2003). Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court, in which he raised the identical claims that he raised on his appeal of right. The Michigan Supreme Court denied leave to appeal. *People v. Staton,* 469 Mich. 877 (2003).

On August 24, 2004, petitioner filed an application for writ of habeas corpus, seeking relief on the following grounds:

I. Improper use of rape shield statute.

II. Impeachment evidence.

III. Prosecutorial misconduct.

IV. Ineffective Assistance of Counsel/Scoring of Offense Variables.

## III. Facts

The material facts leading to petitioner's conviction are set forth in the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

> This case arose when the complaining witness' mother discovered an entry in the complainant's diary indicating that the complainant, then twelve years old, had engaged in sexual conduct with defendant, then aged twenty-three.

> On the night of July 30, 2000, the complainant had her mother's permission to spend the night with a slightly older female friend, but the two youngsters took the liberty of visiting defendant and others, at the home where defendant lived with his mother, for the majority of the night. According to the complainant, defendant escorted her to the kitchen and kissed her on the lips, after which the two returned to defendant's bedroom, and sat or lay on his bed. The complainant testified that defendant then suspended a sheet so as to create a barrier between them and others in the room, continued to kiss her, and repeatedly asked if he could "finger" her. The complainant described defendant unbuttoning her shirt, feeling her breasts with his hands, then loosening her pants and "fingering" her "private area," elaborating that defendant put his finger inside her vagina.

*People v. Staton,* 236380, Slip. Op. at * 1.

Additional facts will be discussed when addressing petitioner's individual claims.

## IV. Analysis

### A. Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but

3

unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### B. Claim I - Rape-shield statute

Petitioner first claims that the trial court deprived him of his Sixth Amendment right to confrontation and his Fourteenth Amendment due process right to present a defense when the trial court when, pursuant to Michigan's rape-shield statute, Mich. Comp. Laws § 750.520j, it excluded evidence that another person present at petitioner's house on the night in question had engaged in consensual sex with the victim that same night. Specifically, petitioner's counsel sought to elicit testimony from Jeffrey Middleton, who was fourteen years old on the night in question, that he had touched the victim on both her breasts and vaginal area. Petitioner sought to introduce this evidence to show that the victim had "pointed her finger in the wrong direction", or stated differently, to support a defense of mistaken identity. The trial court refused to allow Middleton to testify about this sexual contact with the victim, although he was permitted to testify that he was present on the night in question, but never witnessed petitioner engage in any sexually inappropriate activity with the victim. Significantly, however, Middleton admitted at trial that he had passed out from drinking alcohol for a portion of the evening. Middleton, in fact, conceded that he probably fell asleep before petitioner put up the sheet which the victim claimed was used as a barrier between petitioner and the victim and other persons in the room. Every other witness who testified at trial confirmed that Middleton had been asleep or

unconscious for part of the night in question also.

The Michigan Court of Appeals rejected petitioner's claim because Middleton could not account for the victim's time with petitioner in the bedroom and therefore could not contradict the prosecutor's theory of the case. *People v. Staton,* 236380, Slip. Op. at * 3. The Michigan Court of Appeals further noted in light of the victim's testimony which "plainly implicated" petitioner as her assailant, as well as the fact that she denied being intoxicated on the night in question, any theory of "mistaken identity" was "a strained one", therefore, the evidentiary value of this evidence did not outweigh the policy concerns behind the rape-shield statute. *Id.* at * 3-4.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a

risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

The Supreme Court has noted that the legitimate state interests behind a rape-shield statute include giving a rape victim a heightened protection against surprise, harassment, and unnecessary invasions of privacy and may allow the exclusion of relevant evidence if the state's interests in excluding the evidence outweigh the defendant's interests in having the evidence admitted. *Michigan v. Lucas*, 500 U.S. 145, 152-53 (1991). The rape-shield laws were designed to protect the victims of sexual assault and to encourage the reporting of what has traditionally been an unreported crime. *See Carrigan v. Arvonio*, 871 F. Supp. 222, 224 (D.N.J. 1994).

In *Hammer v. Karlen,* 342 F. 3d 807 (7th Cir. 2003), the Court of Appeals for the Seventh Circuit rejected a similar claim as the one raised by petitioner, where the Wisconsin state trial court had barred the petitioner from introducing evidence that the victims had engaged in "sexual horseplay" with one another the day before the incident, in support of his mistaken identity defense, because the evidence could have shown that there was a different assailant [one of the victims]. *Id.* at 809-10. The Seventh Circuit held that the trial court's exclusion of the sexual assault victims' prior sexual conduct, under

Wisconsin's rape-shield law, was not an unreasonable application of Supreme Court precedent, where the evidence was not highly relevant and the petitioner's interest in presenting it was outweighed by the state's interest in protecting the privacy of sexual assault victims, as articulated in the rape-shield statute. *Id.* at 812.

In this case, evidence that Middleton may have engaged in sexual conduct on the night in question was not highly relevant to the issue of whether petitioner sexually assaulted the victim. The exclusion of this evidence did not deprive petitioner of a fair trial, because even if true, the fact that Middleton engaged in sexual conduct with the victim would not necessarily have exculpated petitioner of the crimes for which he was convicted. *See Dixon v. White,* 366 F. Supp. 2d 528, 538 (E.D. Mich. 2005). This is particularly true in light of the fact that Middleton was asleep or unconscious for a portion of the night in question. Because this evidence was only marginally relevant, the Michigan Court of Appeals' determination that the probative value of Middleton's proposed testimony did not outweigh the policy concerns behind the rape-shield law was not an unreasonable application of clearly established federal law. Petitioner is not entitled to habeas relief on his first claim.

### C. Claim II - Impeachment evidence

Petitioner next claims that the trial court erred in permitting the prosecutor to use petitioner's prior convictions to impeach his credibility at trial.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the

application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Here, petitioner's challenge to the state trial court's decision to allow the prosecutor to use petitioner's prior theft convictions for impeachment purposes is not cognizable on habeas review, because it does not present a constitutional issue. *See Peoples v. Fulcomer,* 731 F. Supp. 1242, 1244 (E.D. Pa. 1990). In addition, the Michigan Court of Appeals ruled that the trial court did not abuse its discretion under the Michigan Rules of Evidence in allowing the prosecutor to impeach petitioner's credibility with his prior theft convictions. *People v. Staton,* 236380, Slip. Op. at * 4. Although a state appellate court's finding that no error has occurred is not dispositive when a federal court engages in a fundamental fairness analysis, "it is a strong factor mitigating against a finding that the state trial court's evidentiary ruling rendered the petitioner's trial fundamentally unfair." *United States ex. rel. Hancock v. McEvers,* 619 F. Supp. 882, 887 (N.D. Ill. 1985)(holding that admission of a habeas petitioner's prior convictions was proper under state evidentiary rules and did not render the trial fundamentally unfair). Therefore, petitioner did not suffer prejudice of constitutional dimension when the state trial court refused to preclude admission of his prior theft convictions, because under Michigan law, these prior convictions could have been admitted as impeachment evidence. *See Nichols v. Sullivan,* 867 F. 2d 1250, 1254 (10th Cir. 1989). Petitioner is not entitled to habeas relief on his second claim.

### D. Claim III - Prosecutorial misconduct

Petitioner next contends that the prosecutor committed misconduct by implying,

both in her opening and closing arguments, and in the questioning of witnesses, that petitioner had tried to persuade various witnesses, particularly the victim, to testify falsely on his behalf. Petitioner argues that the prosecutor's questions and comments were improper, because there was no evidentiary support for this line of argument.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the alleged misconduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Byrd v. Collins*, 209 F. 3d 486, 529 (6th Cir. 2000) (*quoting Darden v. Wainwright*, 477 U.S. 168, 181 (1986))(*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Courts must keep in mind that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "Therefore, even if the prosecutor's conduct was 'undesirable or even universally condemned,' *Darden*, 477 U.S. at 181 (quotation marks and citations omitted), it does not constitute a due process violation unless the conduct was 'so egregious so as to render the entire trial fundamentally unfair.'" *Byrd v. Collins*, 209 F. 3d at 529 (end citations omitted). In addition, because this case is a habeas case and is not a direct appeal, the inquiry into an issue of prosecutorial misconduct is less stringent. *See Spalla v. Foltz*, 615 F. Supp. 224, 227 (E.D. Mich. 1985). Furthermore, prosecutorial misconduct falls into the category of trial, rather than structural, errors and may be reviewed for harmless error. *Maurino v. Johnson*, 210 F.3d 638, 647 (6th Cir. 2000), *abrogated on other grounds by Harris v. Stovall*, 212 F. 3d 940, 942-43 (6th Cir. 2000). A habeas petitioner is not entitled to relief where a state court's rejection of his prosecutorial misconduct claim is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See*

9

*Mahaday v. Cason,* 367 F. Supp. 2d 1107, 1120 (E.D. Mich. 2005).

In rejecting this claim, the Michigan Court of Appeals noted that under Michigan law, evidence of a criminal defendant's subsequent efforts to influence or coerce the witnesses against him is admissible where it demonstrates a consciousness of guilt on the part of the defendant. *People v. Staton,* 236380, Slip. Op. At * 5 (*citing People v. Mock*, 108 Mich.App 384, 389 (1981)). The Michigan Court of Appeals further noted that the victim's friend, Kristina Roberts [identified in the Michigan Court of Appeals' opinion only as "the witness"] ultimately testified that petitioner asked her to ask the victim to lie or testify falsely at trial. *Id.* at * 5-6. When the prosecutor attempted to question the victim about whether Roberts had asked her to change her testimony, defense counsel made an objection on hearsay grounds. A record was made outside of the jury's presence, in which the victim indicated that although petitioner had called Roberts in order to get her to testify favorably for petitioner, the victim further acknowledged that petitioner had not contacted her directly. The trial court ruled that the victim's testimony did not establish a sufficient nexus between petitioner and any witness tampering and greatly curtailed the prosecutor's line of questioning on this subject. *Id.* at * 6. The Michigan Court of Appeals concluded that Roberts' testimony that petitioner asked her to get the victim to lie established a sufficient foundation for this line of questioning as concerned this witness. The Michigan Court of Appeals further noted that although the prosecutor's efforts to elicit testimony from the victim concerning witness tampering failed on hearsay grounds, the Michigan Court of Appeals concluded that the prosecutor demonstrated a good faith basis for pursuing this line of questioning. *Id.*

Whether the prosecutor's questions or arguments concerning witness tampering

or intimidation by petitioner were improper because they were made without any evidentiary support is purely a state law issue, and does not warrant federal habeas relief, unless they so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Maciel v. Carter,* 22 F. Supp. 2d 843, 855 (N.D. Ill. 1998). Petitioner's claim fails, in part, because the prosecutor's line of questioning and her arguments concerning witness tampering were supported by the evidence, in light of Roberts' testimony that petitioner asked her to get the victim to lie at trial. *Id.* Moreover, any prosecutorial misconduct resulting from the prosecutor's direct examination of the victim regarding hearsay evidence on this subject did not prejudice petitioner, where the defense objection to this hearsay testimony was sustained by the trial court. *See Weeks v. Senkowski,* 275 F. Supp. 2d 331, 342 (E.D.N.Y. 2003). Moreover, in light of the fact that Kristina Roberts' testimony gave the prosecutor a good faith basis to ask the victim whether she had been asked to testify falsely for petitioner or to lie, petitioner was not deprived of a fair trial in this case. *See Busiello v. McGinnis,* 235 F. Supp. 2d 179, 188 (E.D.N.Y. 2002)(allowing prosecutor to impeach witness with questions about specific prior bad acts, involving alleged attempt to tamper with the testimony of another witness, did not constitute constitutional error, where the witness, who had also changed his grand jury testimony, admitted contacting the other witness, giving the prosecutor a good faith basis for the questions). Petitioner is not entitled to habeas relief on his third claim.

### E.  Claim IV - Sentencing guidelines

In his final claim, petitioner alleges that his sentencing guidelines were incorrectly scored.

Petitioner has no state created liberty interest in having the Michigan sentencing

11

guidelines applied rigidly in determining his sentence. *Thomas v. Foltz*, 654 F. Supp. 105, 106-107 (E.D. Mich. 1987).  To the extent that petitioner is claiming that his sentence violates the Michigan state sentencing guidelines, his claim is not cognizable in a habeas proceeding because it is a state law claim. *Id.*  Petitioner's claim that the sentencing guidelines were incorrectly scored thus fails to state a claim upon which habeas relief can be granted. *Cook v. Stegall,* 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

## V.  Conclusion

For the reasons stated above, the petition for writ of habeas corpus is **DENIED** and the matter is **DISMISSED.**

**SO ORDERED.**

Dated:  August 16, 2005
                        s/Avern Cohn
                        AVERN COHN
                        UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, August 16, 2005, by electronic and/or ordinary mail.

                        s/Julie Owens
                        Case Manager, (313) 234-5160